DORADO BEACH CORPORATION, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, AUGUSTO PALMER, JUDGE, Respondent.

No. C-64-81.     Decided June 30, 1965.

*Fiddler, González & Rodríguez,* and *Juan R. Torruella del Valle* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for the Commonwealth of Puerto Rico, intervener.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Several persons filed a complaint against the Dorado Beach Hotel Corporation pursuant to the procedure established in Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3118 (Supp. 1964), in a claim for wages, vacation and extra hours worked. They allege that "defendant contracted and utilized the services of the complainant workers as 'caddies' for 'tourists' or permanent or transient guests at its hotel, who used its golf course to play said sport."

The defendant challenged the validity of the Act which established the procedure on which complainants based their claim. Defendant maintains that it is unconstitutional because said measure of legislative origin establishes a procedure for claims of wages, thus contravening the constitutional precept which provides that the Supreme Court is the body authorized to adopt initially the regulation of the judicial procedures. The constitutional provision invoked is § 6 of Art. V which reads as follows:

"The Supreme Court shall adopt for the courts rules of evidence and of civil and criminal procedure which shall not abridge, enlarge or modify the substantive rights of the parties. The rules thus adopted shall be submitted to the Legislative Assembly at the beginning of its next regular session and shall

not go into effect until sixty days after the close of said session, unless disapproved by the Legislative Assembly, which shall have the power both at said session and subsequently to amend, repeal or supplement any of said rules by a specific law to that effect."

The trial court dismissed the constitutional contention and then defendant, pursuant to Rule 30 of the Rules of Civil Procedure of 1958, delivered some interrogatories to complainants.[1] It requested a 20-day term to answer the com-

---

[1] The following was the information requested:

"1. Give your name and address.

"2. Give your Social Security Number.

"3. State all the facts you know concerning the allegations you make in the complaint.

"4. Give the name of the employer who hired you during the period to which the complaint refers.

"5. Give a detailed description of the exact nature of your alleged work with defendant indicating the name or names of your immediate supervisor or supervisors.

"6. Give the name of the person who allegedly hired you to work with defendant.

"7. Give the name of the person or persons who paid you for your services during your alleged employ with defendant indicating the manner of compensation and indicating also all deductions, if any, made by defendant if it was your alleged employer.

"8. State whether in your alleged employ with defendant you were required to report for work at a specific time and also if you were required to work until a specific time. If your answer is in the affirmative, give the name of the person employed by defendant to whom you were to report your time of arrival and departure.

"9. Concerning the allegations you make in the complaint state whether you have any record indicating the number of hours you allege to have worked for defendant. If you answer in the affirmative attach copy of those records herewith.

"10. Concerning your alleged employment with defendant, specify the terms of your alleged employment contract with it indicating the term under which you were allegedly employed and the conditions as to compensation and vacation.

"11. State whether or not you work for any other employer besides the defendant indicating name and address of same. Said information shall cover the whole period of the complaint.

"12. State whether you are or have been a student during the period of the complaint. If in the affirmative, give name and address of school you attended. Indicate also the grade or grades you studied.

"13. Explain the control, if any, exercised by defendant on the manner of the performance of your tasks as alleged employee of the former."

plaint as of the date of the answer to the interrogatories. The extension requested was granted. Complainants then filed a petition to set aside the extension granted and to order that the complaint be answered "without the need of the discovery of information requested because it is contrary to § 3 of Act No. 2 of October 17, 1961."

The court decided that complainants were not under obligation to answer the interrogatories. Upon passing on the question it stated:

"This statute [ 3 of Act No. 2 of October 17, 1961] prevents the discovery of information in these cases of claims for wages prosecuted according to a particular procedural law prescribed for this type of actions; the discovery of information prohibited is that which relates to data which must appear in the papers, payrolls, lists of wages and other records which employers are bound to keep under the provisions of the Minimum Wage Act and the regulations promulgated thereunder."

Upon relieving complainants from answering the interrogatories it granted defendant 20 days to answer the complaint.

The complaint was answered within the prescribed term but defendant requested us to review the order which relieved the complainants from answering the interrogatories as well as the refusal to declare Act No. 2 of October 17, 1961 unconstitutional.

Defendant argues that § 6 of the Judiciary Article of our Constitution only empowers the Legislative Assembly to amend, repeal or supplement the rules initially adopted by the Supreme Court. Granting that is the only faculty the Legislative Assembly has we must examine the background of the challenged Act.

Almost fifty years ago the Legislative Assembly approved an act adopting a summary proceeding to regulate the claims for wages. It established a rapid and simple procedure to expedite the proceedings in these claims. When this Court

first adopted the Rules of Procedure in 1943, the procedure established by the Legislative Assembly by means of Act No. 10 of 1917 remained in effect. Likewise in 1958 when new Rules of Procedure were adopted it was specifically provided in Rule 61 that "all special legal proceedings and any other proceedings of a special nature not covered by Rules 55, 56, 57, 58, 59, and 60[2] shall be prosecuted in the manner provided by law." Therefore, the procedure established by the Act of 1917 subsisted as rule of procedure adopted by this Court.

■ Thus, insofar as this Act is concerned, since it was adopted by this Court as special regulation for claims for wages, the Legislative Assembly could amend, repeal or supplement it.

■ Albeit the Act of 1961 repealed the Act of 1917, the truth is that if both statutes are examined it will be noted that the new Act is fundamentally the same as the one repealed. In fact, it is a reenactment of the former with some amendments. It keeps the basic principles of the former and the chief amendment consists of adding the provisions related to the manner in which the Rules of Procedure concerning the discovery of information[3] shall be applied. In

---

[2] Rule 55 deals with extraordinary remedies; 56 with temporary remedies; 57 with injunctions; 58 with condemnation of property; 59 with declaratory judgments, and 60 with a special procedure for claims not exceeding $100.

[3] The differences between the Act of 1917 and that of 1961 are as follows:

| Act of 1917 | Act of 1961 |
|---|---|
| Sec. 1. | |
| 1. Jurisdiction: | |
| District Court, with jurisdiction concurring with Superior Court when the amount exceeds $500. | District or Superior Court, depending on the amount. |

fact, the Legislative Assembly did not approve new rules of procedure for claims for wages. It amended the law in effect which had been adopted by this Court as rule of procedure for this type of claims, and there is no doubt that the Legislative Assembly could amend it. The Constitution specifically authorizes it. See Ramos Buonomo, *La Natura-*

2. Parties:

| Workman or employee only. | Intervention of the Secretary of Labor who may sue *motu proprio* or at the instance and in representation of the workman or employee. He may also constitute himself into petitioner or intervener in any claim under the act. |
|---|---|

Sec. 2. Definitions: (There is no difference.)

Sec. 3. Procedure:

| 1. The judge shall order that notice be served on defendant who must answer within 10 days following the service of notice if in the same judicial district or 15 days in other cases. Only by means of a motion stating under oath defendant's reasons, may the judge extend the term to answer, otherwise judgment will be entered against him. | Exactly like the previous act plus:<br><br>Defendant shall answer in one sole plea in which he shall include all his defenses and objections, it being understood that he waives all defenses and objections not embodied in said plea.<br><br>In relation with the pretrial means of disclosure authorized by the Rules of Civil Procedure the defendant may not use them to obtain information which must appear in the records which the employers are bound to keep under the provisions of the Minimum Wage Act, except any testimony given or document submitted by the complainant in any judicial action. Neither party may submit more than one interrogatory or deposition, except under exceptional circumstances which, in the judgment of the Court, justify the granting of another interrogatory or another deposition. |
|---|---|

*leza del Poder del Tribunal Supremo de Puerto Rico para Adoptar Reglas de Procedimiento Civil y Criminal y Reglas de Evidencia*, 33 *Rev. U.P.R.* 390, 406 (1954).

Let us consider now the question of the interrogatories served by defendant corporation. The trial judge decided that complainants were under no obligation to disclose the information requested inasmuch as the Act provides that "in

The information obtained by the Secretary of Labor in the course of the investigations made in the exercise of the powers granted in the Minimum Wage Act shall be of a privileged and confidential character and may only be disclosed by authorization of the Secretary of Labor.

Sec. 4. Hearing, Judgment by Default: (There are no differences.)

Sec. 5. Copy of complaint to, and intervention by the Secretary of Labor: (There are no differences.)

Sec. 6. Failure of parties to appear:

1. Where none of the parties appear at the hearing the court shall dismiss the claim.

Where none of the parties appear at the hearing the court shall postpone it.

(The same when only defendant appears (dismissal) or when only complainant appears (Judgment).)

Sec. 7. Discretion of the Court:

1. (Sec. 3, discretion pursuant to Rule 60(b) of the Rules of 1943 (a 6-month term).)

Discretion pursuant to Rule 49.2 of the Rules of 1958 (60-day term; there shall be stated therein, under oath, the grounds on which the petition is based).

Sec. 8. Defects in Form: (No differences.)

Sec. 9. Judgment: (No differences.)

Sec. 10. Appeals from the District Court:

Within the first 5 days following the filing of the appeal the clerk shall remit to the Superior Court the original record of the case. The Superior Court shall fix, irrespective of the calendar, a day for the

Regular procedure for appeals from the District Court to the Superior Court.

relation with the pretrial means of disclosure authorized by the Rules of Civil Procedure . . . the defendant may not use them to obtain information which must appear in the records, payrolls, wage lists and other records which the employers are bound to keep under the provisions of the Minimum Wage Act and the regulations promulgated thereunder. . . ."

■ But we cannot apply the law completely apart from the allegations. In the answer filed it is stated that the defendant "specifically alleges that complainants are not and never were employees of defendant." This is, in fact, the main defense raised by defendant. We must presume that said allegation has been made in good faith. When a bona fide controversy exists on whether or not plaintiffs have been employees of defendant and the latter, believing they have not been, does not carry records, payrolls, wage lists and other records, which it is bound to keep under the provisions of the Minimum Wage Act, the provision of the Act of 1961

---

hearing, within the first ten days after the receipt of the proceedings. Notice shall be transmitted to the parties and to the Secretary of Labor.

Sec. 11. Indemnification for dilatory appeal: (No differences.)

Sec. 12. Appeals from the Superior Court: Regular procedure for appeals. (Nonexistent.)

Sec. 13. Limitation of appeals; Certiorari:

| | |
|---|---|
| 1. Only one appeal in trials for farm wages' claims. | Only one appeal allowed. (No reference is made to farm wages.) |

Sec. 14. Payment of Judgment; Execution:

| | |
|---|---|
| 1. Judgment shall order payment to be made within the 5 days following the date when the judgment becomes effective. | Does not provide a term for the payment of judgment. |

Sec. 15. Costs and Attorney's Fees: (There are no differences.)

which prohibits employers from using interrogatories to request such information which they should carry and keep cannot be applied.

It could be argued that in order to be able to use the interrogatories, any defendant would only have to allege that complainants have not been its employees. Nevertheless, nothing prevents plaintiffs from requesting the admission of that fact and in the event defendant denies it and it is proved afterwards to be true, defendant will be subject to the corresponding sanction. On the other hand, the prohibition to use the means to discover information is directed to the employer because complainants being its employees, it is bound to carry and keep the records under the provisions of the Minimum Wage Act and the regulations; but if it is true that defendant did not keep these records because as we already said, it believes in good faith that they are not its employees, then the application of the former, the prohibition to utilize the means to discover information, would turn out to be discriminatory and of doubtful validity. Besides, it is a means to help clarify and simplify the judicial controversy. If prior to the trial defendant did not have knowledge of the details requested, it could only obtain them by means of cross-examination and, evidently, at that time it would not be in the best position to challenge complainant's evidence and the hearing would be unduly prolonged. Thus, in view of the attendant circumstances in the case at bar, in which it is alleged that complainants are not employees, the information requested should be given to defendant.

The order appealed from will be set aside and the case remanded for further proceedings consistent with the foregoing.

Mr. Justice Belaval concurs in the result. Mr. Justice Santana Becerra concurs in part and dissents in part.

Mr. Justice Hernández Matos and Mr. Justice Blanco Lugo did not participate.

—O—

MR. JUSTICE SANTANA BECERRA concurring in part and dissenting in part.

San Juan, Puerto Rico, June 30, 1965

I concur in that Act No. 2 of October 17, 1961 is not unconstitutional, as alleged, for lack of authority of the Legislative Power to approve it.[1] Although I am not in disagreement with the ground given by the Court to uphold the Act under the circumstances in this case, I consider that there are reasons of wider scope which delve into the constitutional problem itself.

The immediate precedent we had in Puerto Rico to authorize the Supreme Court to promulgate and enforce rules in actions at law was Act of Congress No. 415 of June 19, 1934—48 Stat. 1064—which authorized the Supreme Court of the United States to prescribe, by general rules, for the district courts and for the courts of the District of Columbia, the practice and procedure in civil actions at law, and to unite the general rules prescribed by it for cases in equity with those in actions at law so as to secure one form of civil action and procedure for both. The rules were not to repeal, enlarge, or modify the substantive rights of litigants. It was provided that the rules would not take effect until they had been reported to Congress by the Attorney General at the beginning of a regular session and until after the close of such session, and then, every act in conflict with said rules would be rendered ineffective. As it is well known, by virtue of said authority the Supreme Court of the United States adopted rules of civil procedure for the district courts

---

[1] "To establish a summary procedure for cases of claims of workmen and employees against their employers for services rendered"; etc.

of the United States which took effect on September 16, 1938.

We said immediate precedent because actually we neither had here the historic English tradition—our historic procedural tradition was always legislative in all its extent and we were governed by the excellent Spanish Law of Civil Procedure rooted in Fueros, Partidas, Orders and Laws almost since the beginning of the millennium, and by the codified procedural legislation after the change of sovereignty —nor the historic reasons and imperatives which moved Congress to action in view of the complex procedural problems in the courts of the United States, with its different procedures for the actions at law and in equity, and the still more difficult problem on account of the federative nature of the judiciary of the United States which being the same court had to use as many different procedural forms as there were state or local proceedings, which problems did not weigh on us because we did not have them.[2]

---

[2] Actually, too much has been said and written on the subject, without lacking, of course, exaggeration even of reputed panegyrists of the system to the extreme of trying to deny ability and knowledge to the legislatures to act on procedural matter in court and recognize in the judges any capacity and aptitude therefor. For a quick reference on the change and its circumstances, see the relatively brief but very specific and clear exposition of Professor Moore. IA Federal Practice 5017 *et seq.* (2d ed. 1961).

Act of Congress No. 675 of June 29, 1940—54 Stat. 688—granted similar power and in a similar manner to the Supreme Court of the United States to prescribe rules of practice and procedure covering all the steps preceding a verdict, including the latter; or determination of guilt or innocence by the Court in the absence of a jury; or pleading of guilty, in criminal cases in the district courts of the United States, including the district courts of Alaska, Hawaii, Puerto Rico, Canal Zone and the Virgin Islands; in the Supreme Courts of Hawaii and Puerto Rico and in the Court of the United States in China and in proceedings before the commissioners of the United States. Any act in conflict with them would be rendered ineffective. The Rules of Criminal Procedure were adopted and took effect on March 21, 1946. Albeit Act No. 675 included in these rules the Supreme Court of Puerto Rico, the advisory committee did not attempt it for obvious reasons. 11 Cyc. of Federal Procedure 34; Rule 54(a), 18 U.S.C.A., p. 501; 2 Moore, Fed. Practice 21, par. 103 [6] (2d ed.). Never-

With the Acts of Congress Nos. 415 of 1934 and 675 of 1940 as immediate precedents, Act No. 9 was approved in Puerto Rico on April 5, 1941, conferring on the Supreme Court power to regulate the judicial proceedings in all the Courts of Puerto Rico through rules to be promulgated and put in force from time to time, without said rules abridging, enlarging or modifying the substantive rights of litigants. After said rules were approved, copy was to be sent to the Legislature at its next regular session, and they would not become effective until the closing of said session. Every act in regard to judicial practice or procedure in force at the time of the approval of Act No. 9 would remain in force as a rule of the Supreme Court unless it were repealed, amended or modified by the Rules.

In exercise of the power conferred this court adopted rules of civil procedure which were sent to the Legislature on March 18, 1943. The Legislative Assembly did not take any action and the rules, practically patterned on those adopted by the Supreme Court of the United States for the federal courts, went into effect pursuant to its own section on effectiveness on September 1, 1943.

At the beginning of the 1948 session this Supreme Court sent to the Legislative Assembly for the first time a set of Rules of Criminal Procedure.[3] No legislative action was taken, but on April 15, 1948, Act No. 25, amending Act No. 9 of 1941, was approved and it was now provided that the Supreme Court was empowered to "draft and propose" to the Legislative Assembly rules in judicial proceedings in all the courts of Puerto Rico and that after said rules were drafted by the Supreme Court, copy thereof was to be sent

---

theless, and in spite of subsequent amendments to conform the statute to the new situation of Hawaii and Alaska as states, the reference to the Supreme Court of Puerto Rico still subsists in said 1940 statute, in its present version—18 U.S.C.A. § 3771 (1964 Supp., p. 152).

[3] Minutes of the House for 1948, pp. 207, 219, 352; Minutes of the Senate for 1948, pp. 175, 613–615.

to the Legislature for "study and consideration," and they would become effective on the date they were approved, and as amended, by the Legislature. It likewise provided that all laws concerning judicial practice or procedure in force on the date of the approval of Act No. 25 were to continue in force unless modified, amended or repealed by "The Legislature."

The rules of criminal procedure submitted in 1948 never went into effect when the session closed because they were not expressly approved by the Legislature. It may be noted that the legislative rule expressed in 1948 fundamentally departed from the Act of 1941 as well as from the federal rule, in the sense of requiring approval by the Legislature before the rules could take effect.

We have made the foregoing history because it constitutes the normative situation prior to the Constituent Convention and characterized itself: first, because at no time did the Legislature of Puerto Rico, nor did Congress, dispossess itself or waive its power to legislate on all matters, including judicial procedure, notwithstanding the permissible power conferred on the Supreme Court to prescribe rules, which was but an act of voluntary *delegacy* as the action of Congress was interpreted. *Sibbach* v. *Wilson & Co.*, 312 U.S.1, 9; and second, because unlike the standard of Congress and the initial one of our own Legislature in 1941, the situation prevailing when the Constituent Convention met was that such rules constituted proposals to the Legislature and did not take effect unless expressly approved by the Legislature.

The following text of § 6 of Article V of the Constitution referring to the Judicial Power [§ 8] was submitted in the Report of the Judiciary Committee of the Constituent Convention: "The Supreme Court shall adopt rules of evidence and of civil and criminal procedure for the courts of Puerto Rico. The rules thus adopted shall be submitted to the Legis-

lative Assembly at the beginning of its next regular session and shall not go into effect until the closing of said session. The Legislature shall have the power at all times, by specific act limited to that effect, to amend, supplement or repeal any of said Rules."

When said Report was submitted to the Convention in full, Delegate Mr. Ramos Antonini, Chairman of the Committee, in explaining the proposal, stated the following:

"Third characteristic, it is the power conferred on the Supreme Court to adopt rules of evidence and of civil and criminal procedure.

"At present there is a glimpse of that purpose in the legislation in force, but it could very well change at any moment and deprive the Supreme Court of all power to approve such rules. What we do is to raise to a constitutional rank, the proceeding which has existed in our legislation in some other form for the last years, so that it shall be the judicial power itself the one to adopt the rules of procedure.

"It is true that the legislative branch shall retain the power to amend, repeal or supplement the rules adopted by the Supreme Court, and likewise the Supreme Court is bound to submit, at the beginning of each regular session or any session, the rules it has adopted and which shall not take effect until the closing of said session. This tends to create for the moment and in a wholesome manner, what could be called a system of checks and balances between the legislative and the judicial powers, also with the executive, but certainly when the initiative and power is given to the Supreme Court in relation to the set of rules in general, we are convinced that in the course of time a climax regarding the approval of rules will be developed, by means of which it will only be once in a while that the Legislature of Puerto Rico will need, in some way, by amendment, repeal or supplement, perform the function of approving the rules of procedure, which from time immemorial has been an inherent power of the judiciary through history in all the world."[4]

The proposal was the object of an extensive debate on the floor of the Convention, centered precisely in the aspect of

[4] Journal of Proceedings of the Convention 172.

legislative intervention and its scope. Following statements of Delegate Mr. Iriarte, the chairman of the Committee, Mr. Antonini again stated:

"Excuse me, Your Honor, the purpose of submitting those rules to the Legislature is to let the Legislature know them, through the information such remittance constitutes, so that the Legislature, knowing them, would be able then to amend, repeal in full, supplement them in part or not take any action, and they take effect in full or partially, depending on whether the Legislature had repealed, amended or supplemented them."

To a remark made by Delegate Mr. Iriarte saying that it was a new manner of legislating, Mr. Ramos Antonini stated that it was the same procedure as in 1941, referring undoubtedly to Act 9 already mentioned.

Further on in the course of the debate, Delegate Dr. Figueroa submitted the following amendment:

"The rules thus adopted shall be submitted to the Legislative Assembly at the beginning of its next regular session and shall not go into effect until the closing of said session, *unless disapproved by the Legislature,* which shall have the power at all times, by specific Act limited to that effect, to amend, supplement or repeal any of said Rules."

Dr. Figueroa's amendment consisted in inserting the phrase in italics, which recognized the express power of the Legislative Assembly to *disapprove* the set of rules submitted, aside from the power to amend, repeal or supplement "any" of said rules by a specific Act. Both the Chairman of the Committee Mr. Ramos and Mr. Gutiérrez Franqui who defended the proposal immediately accepted Dr. Figueroa's[5] amendment.

No matter the greater or lesser significance that could be attributed to Delegate Mr. Ramos Antonini's thought, after the debate and after its proposal on the floor of the

---

[5] Journal of Proceedings of the Convention 230 and 231. See Journal at pp. 239, 240, 627, 630.

Convention, it seems to me rather clear that in this matter of regulating the procedure the Constitution did not confer on the Supreme Court a power different from, or of any other nature, or essentially more enlarged, than that it enjoyed in a permissible manner by legislative delegacy until 1948. As of that year and until the Constitution, the concept of delegacy was even more restrictive. Albeit the constitutional action did not require the express previous approval of the rules, this was just a return to the original situation of 1941, and, on the other hand, the power of the Legislature to disapprove the rules submitted, and to amend any of them, which was not reserved in that year,[6] was expressly provided.

It can be concluded, as Mr. Ramos stated in part, that the purpose was to raise to a constitutional rank the foregoing statutory delegacy—but, in our judgment, without enlarging or altering the essence of the delegacy—so as to give it, for many desirable reasons, although not free from all criticism or disadvantage, that relatively greater stability offered by the constitutions and a greater immunity against changes with the change of legislatures after every election. I believe that neither because of the statutory situation of revocable delegacy from 1941 to 1952 nor the action of Congress on which it was predicated, nor because of the constitutional situation of nonrevocable delegacy by the Legislature, the Legislature was deprived of its political power to legislate at its own initiative on matters of procedure at any time in which, as an essentially representative power, it deemed it necessary. To consider that the Legislature was deprived of that power which throughout the history of our country, in spite of statements made, was always a power inherent to the legislative judgment and discernment, and not of the judges themselves, I would have to read in the

---

[6] Act No. 25 of April 15, 1948 repealed Act No. 465 of April 25, 1946.

Constitution an express and specific order of dispossession to that effect, and not what could be inferred by implication from the text of §. 6 of Article V. The conferring of a power on the Supreme Court without a specific reference to its being granted exclusively, does not destroy, in my opinion, the initiative of the Legislative power inherent to its political power.

At the best, I am of the opinion that the Constitution allowed the action of both powers to concur. It is also clear to me, that like in the preceding period, the Constituent Convention might have wanted that such initiative were ordinarily used by the Supreme Court because it deemed it to be desirable, according to the system and mode of action adopted in 1941 and which, as we understand Mr. Ramos Antonini meant to say, it invites the Legislature to a certain cautious abstention, under good judgment criteria and in the absence of extraordinary situations, from anticipating its initiative. I do not believe this to mean that the Legislative Assembly cannot constitutionally exercise it when circumstances demand it.

I further believe that the concurring initiative conferred on the Supreme Court involves the *stricto sensu* procedure: the matter ordinarily covered by the laws and codes of procedure as a branch of law and that when legislation does not contemplate such a purpose, but has instead other purposes or of establishing some desirable public policy—in this case that of Act No. 2 of October 17, 1961—it can hardly be said that there is no constitutional authority even when, to accomplish adequately the purpose sought or the desired public policy it will be necessary to establish procedural rules on a vast scale.

In all this there are involved fundamental considerations of a social order. The judicial procedure of a people is not a thing of interest only to that minimum sector of society which at one time or another is a litigant or resorts to or

is taken to court. As Montesquieu stated in his *L'Esprit des Lois*, the procedural rules concern humanity more than anything else in the world.

In fact, procedural forms are clothed with the greatest public interest, because depending on what they treat, they may or may not represent those of a system of protection and privileges for some classes or castes and of oppression or neglect for others less strong and fortunate. In the prosecution of the offender—most of the times the delinquent comes from the most destitute and powerless social stratum, product in great part of the grave and tragic shortcomings of the social body itself—they can represent a cruel or civilized people. Perhaps nothing can express better the high grade of cultural refinement of a society than the measure in which it has been able to depurate its rules of procedure, both in the civil and in the criminal aspects, the higher the degree of depuration, the higher the purification of the collective conscience.

By that I understand, even though many have understood otherwise, that the rules of procedure are not mere technical formulas of mental agility product of jurist-expertise technology. They bear, on the contrary, all the accumulated social and political burden of a people. I cannot consider excluded from them, unless the people shall expressly decide so in a constitutional provision, the initiative of the legislator whose political representation, not that of the jurist expert, covers the whole gamut of social living with its conflicting interests. In order to enforce a specific public legislative policy in any sphere of action, a rule of procedure may be of vital importance. It would be absurd to believe that a legislator would have to interrupt his function at the point where legislation called for a procedure because of lack of initiative. Act No. 2 of October 17, 1961, like other statutes in force which call for procedural rules, the traffic law for example, involve public policies which the

legislator considered desirable, and which in my judgment are valid, even though to do so it had to create procedure.

I must dissent in the second aspect of the case. It all indicates that, precisely, Act No. 2 of 1961 was due to or could have been due to a disagreement between the legislator and, in my opinion, a too far-reaching scope with which the Court applied certain procedural provisions in a claim or complaint, by workmen, in *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540, decided September 10, 1959.

The record shows that the workmen's complaint had sufficient information. Attached thereto as exhibits were a lengthy relation including the name of the claimant, the alleged period of work, the amount claimed during the period on a regular-salary basis and waiting time, and the amount on a holiday basis, the amount claimed for vacation by each worker, the number of hours worked each week and the amount claimed for the lunch hour. The complaint was filed on July 3, 1963.

After many steps were taken the answer on the merits was filed on October 30, 1964. In the meantime, on July 22, 1964, the trial court, which ratified itself on the following October 9, dismissed the interrogatories submitted by defendant Dorado Beach Corporation in which it requested information contained in the complaint. The answer consists of a complete denial that the workers had been employees of the corporation, the attack for the nullity of Act No. 2 and a plea of prescription.

Under the circumstances of the case and in the light of said statute and its public policy, I understand that the refusal of the trial court, which in my judgment is correct, to order the answer of the interrogatories creating an unnecessary prolonged delay in the decision of the case should not be altered. In fact, in the manner in which the corporation joined the issue—they were not its employees—the case could go to trial immediately.